IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST MAGNUS FINANCIAL )
CORPORATION, )
 )
      Plaintiff, )
 )
vs. ) No. 03 C8052
 )
LESZEK DOBROWSKI a/k/a MAREK )
MAKA; et al., )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff First Magnus Financial Corporation (First Magnus) brought this action against defendants MVP Appraisals and Consultants (MVP Appraisals); Omega Financial Enterprises, Inc. (Omega); Alliance Title Corporation (Alliance Title); Guarantee Title & Trust Corporation (Guarantee Title); and individual defendants Mykolai Ponchko; Leszek Dobrowski; Katarazyna Kielczyk; and Maya Jordan, for multiple claims arising out of an allegedly fraudulent real estate transaction. In its original complaint plaintiff alleged seven counts. Counts I-IV are common law fraud claims against Ponchko, Dobrowski, Kielczyk, Jordan and MVP Appraisals, and count V alleges these defendants conspired to defraud plaintiff. Count VI is a breach of warranty and representations claim against Omega. Count VII alleges Alliance Title and Guarantee Title breached their title policy.

In an amended complaint plaintiff added three additional claims. Plaintiff brought two of the claims, count VIII for negligent misrepresentation and count IX for bad faith pursuant to 215 ILCS § 5/155, against both Alliance Title and Guarantee Title, while the third claim, count X, for violation of the Illinois Consumer Fraud Act, 815 ILCS § 505/1 *et seq.*, is alleged

only against Alliance Title. Alliance Title now moves to dismiss all the claims alleged against it and Guarantee Title moves to dismiss count VIII. Both motions are granted.

## BACKGROUND

The following facts, taken from First Magnus' complaint, are for purposes of these motions accepted as true. In June 2002, First Magnus, a mortgage company headquartered in Tucson, Arizona, entered into an agreement with Omega, a mortgage broker in Chicago, Illinois, under which Omega originated loans to be funded by First Magnus. Soon after they formed their agreement Omega sent First Magnus closing documents for a loan to Mykolai Ponchko for the purchase of a residential property on the south side of Chicago. Ponchko had submitted a loan application to Omega on June 5, 2002, seeking $175,500 to purchase a two-flat building at 1216 S. Avers. On the application Ponchko reported that he worked for a building company and had a net worth of $115,000. The closing documents for Ponchko's loan included an appraisal of the property at 1216 S. Avers. In the appraisal, dated May 5, 2002, Maya Jordan, an employee of MVP appraisals, stated that the two-flat building was in very good condition and valued the property at $195,000. Guarantee Title, as an agent for Alliance Title, issued a title commitment[1] to First Magnus for the property at 1216 S. Avers. The title policy stated that Leszek Dobrowski and Katarazyna Kielczyk owned the property as of June 4, 2002, as tenants in common.

Based on the loan application, appraisal and title commitment, on July 8, 2002, First Magnus agreed to loan Ponchko $175,500, to be repaid over 30 years, at an annual interest rate of 7.875 per cent. To secure the loan, First Magnus took a first and prior mortgage on the property. The company recorded its mortgage on August 8, 2002. In early August 2002, First

---

[1] Plaintiff incorrectly refers to the title commitment as the "title policy" in its complaint.

Magnus sold Ponchko's loan to Countrywide Mortgage.

A few months later it became apparent that something was amiss. After Ponchko failed to make his loan payments, Countrywide Mortgage attempted to contact him, but to no avail. On January 14, 2003, an investigator hired by Countrywide Mortgage discovered that Ponchko had never lived at 1216 S. Avers, and that the City of Chicago had recently demolished the two-flat building at that address. Since July 2001, City inspectors had reported that the building was vacant, open and in disrepair. In November 2001, they began leaving notices that the building was subject to demolition. Countrywide Mortgage's investigator appraised the value of the property as of May 5, 2002, the date of MVP Appraisals' report, at $110,000 – $85,000 less than Jordan's appraisal. After Countrywide Mortgage initiated foreclosure, First Magnus repurchased Ponchko's loan. Thereafter, First Magnus learned that, contrary to the representation in the title commitment, Dobrowski and Kielczyk did not own 1216 S. Avers at the time of Ponchko's purchase. On November 22, 2001, Dobrowski and Kielczyk had transferred ownership of the property to Heritage Unlimited, Inc. (Heritage), through a quit claim deed, which it recorded before Guarantee Title issued its title commitment.

First Magnus brought this action on November 12, 2003. Subsequently, Alliance Title filed a third party complaint seeking (1) a declaratory judgment that the Heritage deed was invalid and (2) a quiet title in the name of Ponchko. The court entered a default judgment against Heritage in an order dated November 2, 2004. On December 20, 2004, the third party complaint was dismissed pursuant to settlement with the remaining third party defendants, and the court entered an order declaring the Heritage deed invalid and First Magnus' mortgage a fully enforceable lienhold interest. That led to the voluntary dismissal of count

VII, breach of the title policy. That policy absolves liability if the title defect is cured, and it was. Count VII is dismissed.

## DISCUSSION

Both Alliance Title and Guarantee Title (collectively "defendants") move to dismiss the counts remaining against them. Alliance Title brings a Rule 12(b)(6) motion to dismiss counts VIII, IX, and X, and Guarantee Title brings a Rule 12(b)(6) motion to dismiss count VIII. A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989). In deciding a motion to dismiss, the court must assume the truth of all well-pleaded allegations, making all inferences in the plaintiff's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Count VIII of plaintiff's complaint alleges that defendants falsely, recklessly and negligently misrepresented in their title commitment that Dobrowski and Kielczyk held free and clear title to 1216 S. Avers as of June 4, 2002. Relying on the information in the title commitment, plaintiff, unaware that Heritage had recorded a deed to the property with the Cook County Recorder of Deeds on May 31, 2002, loaned Ponchko money to purchase the property. Plaintiff seeks to recoup its losses from the loan issued to Ponchko, basing its claim not on contract but on tort concepts. Defendants argue that they cannot be held liable for plaintiff's economic loss due to a negligent misrepresentation.

The Illinois Supreme Court's Moorman doctrine generally bars plaintiffs from recovering solely economic losses through a tort action. Moorman Manufacturing Co. v.

National Tank Co., 91 Ill.2d 69, 86, 435 N.E.2d 443, 450 (Ill. 1982). In Moorman, the court held that the purchaser of a defective grain storage tank could not bring tort claims against the defendant manufacturer to recover its economic loss. 91 Ill.2d at 91, 435 N.E.2d at 453. The court reasoned that if it allowed such suits, tort law would eventually envelop contract law. Id. Nonetheless, the court did identify three exceptions to the Moorman doctrine: "(1) where the plaintiff sustained personal injury or property damage resulting from a tortious event, i.e., a sudden or dangerous occurrence; (2) where plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." Fireman's Fund Insurance Co. v. SEC Donohue, Inc., 176 Ill.2d 160, 164, 679 N.E.2d 1197, 1199 (Ill. 1997)(*internal citations omitted*); In re Chicago Flood Litigation, 176 Ill.2d 179, 199, 680 N.E.2d 265, 275 (Ill. 1997); Lyons v. State Farm Fire and Casualty Co., 349 Ill.App.3d 404, 411, 811 N.E.2d 718, 725 (5th Dist. 2004).

Plaintiff does not dispute that it seeks damages only for economic losses. However, it argues that the third exception to the Moorman doctrine applies in this case because the defendant title companies are in the business of supplying information for the guidance of others in their business transactions. Defendants reply that count VIII fails to allege that they are in the business of supplying information and, more significantly, that as a matter of law title insurers are not information providers for purposes of this exception.

The Illinois Supreme Court has not addressed whether this exception applies to title insurers accused of negligent misrepresentation. Plaintiff and defendants rely on conflicting cases in the Illinois appellate courts to support their positions. First Magnus cites Notaro

Homes, Inc. v. Chicago Title Insurance Co., 309 Ill.App.3d 246, 249, 722 N.E.2d 208, 211 (2d Dist. 2000), in which the plaintiff purchaser sued the defendant title insurer for negligent misrepresentation based on its failure to note in its title commitment that a recorded city ordinance prohibited the construction of a residential dwelling on the purchased property. The appellate court reversed the lower court's dismissal of the claim, stating that "the exception to *Moorman* does apply to cases where a prospective purchaser orders a commitment for title insurance and in reliance thereon enters into a business transaction." 309 Ill.App.3d at 257, 722 N.E.2d at 216. Defendants rely on the more recent ruling in First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 291 Ill. Dec. 158, 823 N.E.2d 168 (1st Dist. 2005). In First Midwest Bank, the court acknowledged the holding in Notaro Homes, but then stated that it found other precedent, where courts did not apply the exception to insurers, more "instructive." 291 Ill. Dec. at 171, 823 N.E.2d at 181. The court held that a title insurer who issues a title commitment is not an information provider subject to the *Moorman* exception. *Id.* We find the court's reasoning in First Midwest Bank persuasive and apply its holding in this case.

The central inquiry in determining whether plaintiff can state its negligent misrepresentation claim against defendants is whether defendants were in the business of supplying information for the guidance of others, or whether the information that they supplied was "merely ancillary to the sale or in connection with the sale of merchandise or other matter." Fireman's Fund Insurance Co. v. SEC Donohue, Inc., 176 Ill.2d 160, 168, 679 N.E.2d 1197, 1201 (Ill. 1997). To be in the business of supplying information, the sale of information need not be an entity's entire enterprise, but it must be central to transactions with its customers. First Midwest Bank, 291 Ill. Dec. at 169, 823 N.E. at 179. Courts have

found that an insurer, *see* International Surplus Lines Insurance Co. v. Fireman's Fund Insurance Co., 1989 WL 99771 at *1-2 (N.D.Ill. 1989), and an insurance carrier, *see* University of Chicago Hospitals v. United Parcel Service, 231 Ill.App.3d 602, 596 N.E.2d 688, (1st Dist. 1992), are not in the business of supplying information. In International Surplus, the court rejected the plaintiff's contention that since insurance policies are based on supplied information, insurers are in the information business. 1989 WL 99771 at *1-2. The business of insurance companies is "accepting a risk in return for money," the court appropriately noted. *Id.* at *2. Unlike termite inspectors, Perschall v. Raney, 137 Ill.App.3d 978, 484 N.E.2d 1286 (1986), stock brokers, Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Ill.App.3d 75, 385 N.E.2d 376 (1979), and a bank selling credit information, DuQuoin State Bank v. Norris City State Bank, 230 Ill.App.3d 177, 595 N.E.2d 678 (1992), an insurance company's product is not information, it is insurance.

In First Midwest Bank, the court found that the same held true for title insurers. 291 Ill. Dec. at 172, 823 N.E.2d at 182. A title commitment provides information, but it is in connection with the sale of title insurance. The title insurer's product is not information concerning liens or encumbrances on the title; the product is the insurer's assumption of the risk that other encumbrances on the title may exist. Therefore, the title commitment is ancillary to the insurance company's business.

Plaintiff cites to the Illinois Title Insurance Act, 215 ILCS § 155/1 *et seq.*, to support the proposition that the role of the title insurer includes abstracting, searching or examining titles, all of which must be done with ordinary care. Yet, this statute only highlights that these activities, and the information they produce, are secondary to a title insurer's primary occupation: issuing insurance. The Act states "'Title insurance business' or 'business of title

insurance' means: (A) Issuing as insurer or offering to issue as insurer title insurance; and (B) Transacting or proposing to transact one or more of the following activities when conducted or performed in contemplation of or in conjunction with the issuance of title insurance; ... (vi) abstracting, searching, or examining titles." 215 ILCS 155/3(1). Thus, the business of title insurers remains the issuance of insurance. Count VIII against Alliance Title and Guarantee Title is dismissed because these defendants are not, as a matter of law, in the business of supplying information.

Alliance also moves to dismiss count IX for bad faith brought under state statute 215 ILCS § 5/155. Section 5/155 states:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $60,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

This section provides an extra-contractual remedy when an insurer's refusal to act on a policyholder's claim amounts to a vexatious and unreasonable delay. Estate of Price v. Universal Casualty Co., 334 Ill.App.3d 1010, 1012-13, 779 N.E.2d 384, 387 (1st Dist. 2002); Knoll Pharmaceutical Co. v. Automobile Insurance Co. of Hartford, 210 F.Supp.2d 1017, 1028 (N.D.Ill. 2002). Whether an insurer's conduct is vexatious and unreasonable is a factual

inquiry that requires the court to look at the totality of the circumstances, including "the insurer's attitude, whether the insured was forced to file suit to recover and whether the insured was deprived of the use of its property." Knoll, 210 F.Supp.2d at 1028.

Plaintiff alleges that Alliance Title's actions were vexatious and unreasonable because it failed to respond to First Magnus' March 2003 written notice of the title commitment's misrepresentations and the insurer's breach of title policy. Subsequently, on November 12, 2003, First Magnus notified Alliance Title and Guarantee Title of its loss with respect to 1216 S. Avers. This was the same day that First Magnus filed suit against the title insurers. Plaintiff further alleges that in the course of litigation Alliance Title denied the authenticity of the title policy and commitment, refused to provide a copy of the title policy to First Magnus even though it was required to do so if it intended to rely on it, and that Alliance Title's president committed perjury concerning his role in the execution of a quit claim deed between Kielczyk and Dobrowski.

Alliance Title contends that public records establish that it did not delay, much less vexatiously or unreasonably delay, the resolution of plaintiff's claim. It contends that the first and only notice of a claim was made on November 12, 2003, which it acknowledged in its answer to First Magnus' complaint. After answering plaintiff's complaint on March 18, 2004, Alliance Title sought leave to file a cross-claim on June 17, 2004. Leave was granted and on August 25, 2004, Alliance Title filed its third party action to clear title. On December 20, 2004, the cloud on Ponchko's title was lifted and the primacy of First Magnus' lien was confirmed.

Given Alliance Title's actions after notice of First Magnus' suit, the question of vexatious delay only arises from the company's alleged lack of response to the March 2003 claim notice. First Magnus asserts that the insurer's lack of response forced it to file suit.

Alliance Title claims that its first notice of the claim came at the time the action was filed. Typically, a factual dispute of this sort would preclude Rule 12(b)(6) dismissal. However, in light of the complaint's allegations, dismissal is appropriate. Count IX incorporates paragraphs 1 through 35 of plaintiff's complaint. In paragraph 32, plaintiff states that on or about May 13, 2003, it "learned for the first time that Dobrowski and Kielczyk did not own [1216 S. Avers] as of June 4, 2002 as represented in the Title Policy [sic]." If plaintiff did not learn of the title commitment's misrepresentations until May 13, 2003, then it could not possibly have notified Alliance Title of its alleged breach two months earlier in March 2003. Given this inconsistency in the pleadings, we disregard plaintiff's allegation that it notified Alliance Title of its insurance claim in March 2003. Absent the allegation of an eight-month delay in acting on plaintiff's claim, the complaint provides no basis for finding that Alliance Title engaged in a vexatious and unreasonable delay in dealing with First Magnus. The only time after May 13, 2003, that First Magnus allegedly notified Alliance Title of its insurance claim, was the same day it filed suit against the insurer: November 12, 2003. None of Alliance Title's alleged actions following the initiation of suit amounts to an unreasonable delay. In fact, the insurance company rather quickly took action to quiet title to the property. Count IX against Alliance Title is dismissed.

Finally, Alliance Title moves to dismiss count X, in which First Magnus alleges violation of the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/1 *et seq.* Alliance Title argues that this claim should be dismissed because it is preempted by Section 155 of the Illinois Insurance Code, the requested relief has already been granted, and plaintiff is a non-resident and therefore has no standing. We dismiss the claim on different grounds.

Section 2 of the ICFA states that "[u]nfair methods of competition and unfair or

deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. To establish a violation of the Act, plaintiff must prove "(1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce." Siegel v. Levy Organization Development Co., Inc., 153 Ill.2d 534, 542, 607 N.E.2d 194, 198 (Ill. 1992). As its name implies, the Act protects against consumer fraud. It defines consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Businesses can be consumers entitled to bring suit under the Act. See Skyline International Development v. Citibank, F.S.B., 302 Ill.App.3d 79, 85, 706 N.E.2d 942, 946 (1st Dist. 1998); Law Offices of William J. Stogsdill v. Cragin, 268 Ill.App.3d 433, 437, 645 N.E.2d 564, 566 (2nd Dist. 1995). For example, in Skyline International Development, the plaintiff corporation was a consumer when it used the defendant bank's services to wire-transfer funds to China. 302 Ill.App.3d at 85, 706 N.E.2d at 946. However, where a corporation makes a purchase for future resale, it is not a consumer. See Prime Leasing, Inc. v. Kendig, 332 Ill.App.3d 300, 313, 773 N.E. 2d 84, 95 (1st Dist. 2002); First Comics, Inc. v. World Color Press, Inc., 672 F.Supp. 1064, 1067 (N.D.Ill. 1987). Nonetheless, a non-consumer corporation may still be able to bring a claim under the ICFA if there is a nexus between the alleged fraud and injury to consumers. Skyline International Development,

302 Ill.App.3d at 85, 706 N.E.2d at 946 (citing <u>Empire Home Services, Inc. v. Carpet America, Inc.</u>, 274 Ill.App.3d 666, 653 N.E.2d 852 (1st Dist. 1995)); <u>Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.</u>, 275 Ill.App.3d 452, 459, 654 N.E.2d 1109, 1116 (2d Dist. 1995); <u>CTS Corp. v. Raytheon Co.</u>, 1993 WL 157464 at *3 (N.D.Ill. 1993)(" Where a dispute involves two businesses that are not consumers, the proper test is whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.").

First Magnus is not a consumer under the Act. According to the complaint, one month after issuing Ponchko a mortgage loan, First Magnus sold the loan and the title insurance that went along with it on the secondary mortgage market. Before the title policy was even issued on August 30, 2002, First Magnus' successor-in-interest, Countrywide Mortgage, was the insured covered by the policy. Plaintiff's allegations reveal that it resold Alliance Trust's service in the ordinary course of its business, and thus it was not a consumer under the ICFA definition. As the complaint does not allege a nexus between Alliance Trust's actions and injury to consumers, plaintiff cannot bring a claim under this Act. Count X is dismissed.

## CONCLUSION

Both Alliance Title's and Guarantee Title's motions to dismiss are granted. Plaintiff has voluntarily moved for dismissal of count VII. We dismiss counts VII and VIII against both defendants and counts IX and X against Alliance Title.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 2, 2005.